[818 NYS2d 73]

Mᴛ. McKɪɴʟᴇʏ Iɴsᴜʀᴀɴᴄᴇ Cᴏᴍᴘᴀɴʏ, Formerly Known as Gɪʙʀᴀʟᴛᴀʀ Cᴀsᴜᴀʟᴛʏ Cᴏᴍᴘᴀɴʏ, et al., Plaintiffs, v Cᴏʀɴɪɴɢ Iɴᴄᴏʀᴘᴏʀᴀᴛᴇᴅ, Respondent, and AIU Iɴsᴜʀᴀɴᴄᴇ Cᴏᴍᴘᴀɴʏ et al., Appellants, et al., Defendants.

First Department, June 29, 2006

### APPEARANCES OF COUNSEL

*Lynberg & Watkins*, Los Angeles, California (*Michael Jay Larin* of counsel), and *Mound Cotton Wollan & Greengrass*, New York City (*James M. Dennis* of counsel), for AIU Insurance Company and others, appellants.

*Mendes & Mount, LLP*, New York City (*Dennis J. McEnery* of counsel), and *Susman Godfrey LLP*, Houston, Texas (*Joseph S. Grinstein* and *Michael P. Geiser* of counsel), for London Market Insurers, appellants.

*McDermott Will & Emery LLP*, Washington, DC (*M. Miller Baker*, of the Louisiana Bar, admitted pro hac vice; *Richard B. Rogers* and *James E. Smith* of counsel); *McDermott Will & Emery LLP*, New York City (*Daniel A. Mullen* and *Danielle A. Schweiloch* of counsel); and *Carroll Burdick & McDonough LLP*, San Francisco, California (*Rodney L. Eshelman* and *Gretchen A. Ramos* of counsel), for Continental Casualty Company and others, appellants.

*Debevoise & Plimpton LLP*, New York City (*Robert D. Goodman* and *Steve Vaccaro* of counsel), for Travelers Casualty & Surety Company, as successor-in-interest to The Aetna Casualty & Surety Company, appellants.

*Ward Norris Heller & Reidy LLP*, Rochester (*Thomas S. D'Antonio, Cheryl A. Heller* and *Maria M. Herrero-Jaarsma* of counsel), for respondent.

### OPINION OF THE COURT

Sullivan, J.

This is a declaratory judgment action, which arises in the context of mass asbestos liability exposure on the part of Corning Incorporated, brought by two of its insurers, Mt. McKinley

Insurance Company and Everest Reinsurance Company,[1] against Corning and other insurers that similarly issued commercial general liability (CGL) policies to Corning. Plaintiffs seek a declaration that the policies they issued do not cover, or at most, provide limited coverage with respect to, the asbestos-related bodily injury claims asserted against Corning. Defendant insurers, which have filed cross claims against Corning similar to those alleged in the complaint, appeal from Supreme Court's grant of Corning's motion, made in the alternative to a dismissal motion, for a stay of this action pending resolution of certain issues in related matters pending in federal court in Pennsylvania.

The asbestos claims against Corning generally fall into two categories: claims arising from exposure to products sold by a former Corning subsidiary, Corhart Refractories (Corhart claims), and claims arising from exposure to the product Unibestos (Unibestos claims), manufactured from approximately 1962 through 1972 by Corning's affiliate, Pittsburgh Corning Corporation (PCC), owned equally by Corning and PPG Industries, Inc. Corning is a named defendant in thousands of claims of both types.

In 2000, PCC commenced a voluntary chapter 11 bankruptcy proceeding in the United States District Court for the Western District of Pennsylvania, and in May 2002 announced a reorganization plan that would create a trust funded with approximately $2.7 billion for the disposition of asbestos claims against PCC and PPG. The plan did not address Corning's liabilities.

Thereafter, on July 3, 2002, plaintiffs commenced this action in Supreme Court, New York County, alleging that the CGL policies they issued to Corning from 1962 through 1985 do not cover or provide limited coverage for the Corhart and Unibestos claims, while defendant insurers' CGL policies do provide such coverage. The latter have cross-claimed against Corning, alleging that their policies do not cover or provide limited coverage for the Corhart and Unibestos claims.

The 145 policies in issue, with aggregate limits of $1.7795 billion, fall into three categories. The first and smallest, providing coverage with an aggregate limit of $225 million and representing 12.6% of the insurance limits at issue, consists of 10 pre-1974 excess policies, as to which both Corning and its affiliate,

---

1. Plaintiffs are not participating in this appeal.

PCC, seek coverage (the affiliate policies). The second category, consisting of 40 policies as to which only Corning claims coverage and as to which it seeks to assign its policy rights as part of the PCC plan (the assigned policies), provides an aggregate limit of $296 million and comprises approximately 16.6% of the insurance limits at issue. The third and largest category, consisting of the 95 remaining policies as to which only Corning claims coverage and which it does not seek to assign as part of the PCC plan (the nonaffiliate, nonassigned policies), provides coverage with an aggregate limit of $1.2585 billion and comprises approximately 70.7% of the insurance limits at issue. This category, the nonaffiliate, nonassigned policies, comprising the overwhelming majority of policies at issue, is not referred to in the PCC plan or affected by it.

Three weeks after the commencement of this action, on July 24, 2002, Corning removed it to the United States District Court for the Southern District of New York on the ground that it was related to the PCC bankruptcy. Corning thereafter moved to transfer the action to the bankruptcy court in the Western District of Pennsylvania, to be consolidated with a mirror image adversary proceeding that Corning commenced the day after it removed this action to the federal court. Defendant insurers opposed the transfer motion and moved for remand on several grounds, including lack of subject matter jurisdiction and mandatory abstention under 28 USC § 1334 (c) (2). The District Court in New York ruled that it had subject matter jurisdiction over only those claims arising under the 10 affiliate policies, which, as noted, comprise merely 12.6% of the total insurance limits at issue, finding that these claims were "core" to PCC's reorganization in the Western District of Pennsylvania. Rejecting Corning's argument that all of its policies were part of a unified coverage program that must be interpreted by one court, the New York District Court held that since PCC had no interest in the remaining 135 policies, the adjudication of rights under those policies by the New York Supreme Court would "not interfere in any way with the work of the [PCC] bankruptcy court" (2003 WL 1482786, *9, 2003 US Dist LEXIS 4295, *28). The New York District Court remanded all the claims in the remainder of the action, characterized as "the bulk of this litigation," to Supreme Court (2003 WL 1482786, *8, 2003 US Dist LEXIS 4295, *25). Although finding federal jurisdiction as to the claims arising under the affiliate policies, the New York District Court stayed proceedings on these claims in light of

Corning's assertion of duplicative claims in an adversary proceeding in PCC's bankruptcy proceeding. Since the federal District Court in New York found that Corning's claims on the affiliate policies triggered core, rather than non-core, bankruptcy jurisdiction, it concluded that mandatory abstention under 28 USC § 1334 (c) (2) did not apply to those policies.

Corning announced on March 28, 2003 that it had agreed to participate in the PCC plan, to which it would contribute cash, stock and an assignment of rights under the assigned policies, valued at no less than $300 million, in exchange for a complete release with respect to both the Corhart and Unibestos claims. Corning planned to recover the cost of its contribution to the plan from its insurers, including defendant insurers, by expressly reserving its right to do so. On April 10, 2003, Corning moved before the New York District Court to modify its earlier order to provide that the assigned policies, in addition to the affiliate policies, were subject to federal jurisdiction. The District Court denied the motion, holding that the proposal to assign these assigned policies did not bring them within federal bankruptcy jurisdiction, and reaffirming its remand to Supreme Court of all the claims relating to the policies except the affiliate policies.

In Corning's adversary proceeding in the PCC bankruptcy against PCC and virtually all of the defendant insurers in this action, Corning sought a declaration of coverage under its CGL policies for asbestos claims, expressly alleging the existence of a justiciable controversy between it and all of its insurers with respect to coverage for the Corhart and Unibestos claims. Several insurers successfully moved in the Pennsylvania District Court to withdraw the reference of the adversary proceeding from the PCC bankruptcy court. On Corning's motion to vacate the withdrawal of the reference, a hearing was held, at which the Pennsylvania District Court dismissed, without prejudice, Corning's claims under the nonaffiliate, nonassigned policies on the basis of abstention and deference to the New York State court proceeding. The court stayed the remaining claims with respect to the affiliate and assigned policies. That stay is still in effect.

Two weeks later, on July 15, 2003, Corning moved in Supreme Court to dismiss the complaint on numerous grounds, including lack of a justiciable controversy. Later, it also moved to dismiss defendant insurers' cross claims. Alternatively, Corning sought a stay of the New York action pending confirmation of the PCC

plan in the bankruptcy proceeding and resolution of the adversary proceeding. Supreme Court stayed any decision on the justiciability of the action and held the dismissal motions in abeyance "until the District Court of the Western District of Pennsylvania decides whether the federal courts have jurisdiction to determine coverage concerning all the insurance policies at issue here, as well as until a reorganization plan has been confirmed in the bankruptcy action."[2] With respect to the affiliate and assigned policies, the court held, "Given the present status of the adversary proceeding, it would be inappropriate" to do anything else. As to the nonaffiliate and nonassigned policies, the court found that some of these policies were underwritten by insurers that had also issued affiliate and assigned policies. This appeal, insofar as it stayed the action, followed. We reverse and vacate the stay.

Contrary to Supreme Court's ruling, the fact that some of the nonaffiliate and nonassigned policies were issued by insurers that had also issued affiliate and assigned policies is of no legal significance and furnishes no basis for the grant of a stay. The grant of a stay based on justiciability concerns as to these policies constituted a clear abuse of discretion (*see Pierre Assoc. v Citizens Cas. Co. of N.Y.*, 32 AD2d 495, 496-497 [1969]) because the claims in this action arising out of the 95 nonaffiliate, nonassigned policies present a justiciable controversy, whatever the outcome of the PCC bankruptcy or the adversary proceeding. If the PCC plan is not confirmed, Corning will remain subject to thousands of Corhart and Unibestos claims. As to those claims, disputes over coverage will be, as they are now, justiciable. If the plan is confirmed, while Corning will have thereby liquidated its potential asbestos liability with respect to Unibestos and Corhart claims, its claim to recoup its $300 million contribution to the PCC plan from its insurers survives and presents a justiciable controversy. Thus, Corning's coverage dispute with the insurers of the nonaffiliate, nonassigned policies is pres-

---

**2.** Subsequent to Supreme Court's determination, the United States Court of Appeals for the Second Circuit vacated the Southern District Court's order retaining jurisdiction of the claims with respect to the 10 affiliate policies, finding that these claims were not within the "core" jurisdiction of the PCC bankruptcy court. On the basis of mandatory abstention compelled by 28 USC § 1334 (c) (2), the court held that the District Court was required to remand all claims and proceedings on the affiliate policies to Supreme Court as long as the latter was capable of "timely adjudicat[ing]" the coverage disputes with respect to those policies (*Mt. McKinley Ins. Co. v Corning Inc.*, 399 F3d 436, 447-448 [2005]).

ently justiciable for the same reasons that its coverage disputes with the insurers of the affiliate and assigned policies are admittedly justiciable. Since all the claims in this action are justiciable, and in light of subsequent developments (the Second Circuit's ruling that not even the 10 affiliate policies present issues within the bankruptcy court's core jurisdiction), Supreme Court should proceed to adjudicate all the claims.

Although the stay order purports merely to stay, not decide, the justiciability of the issues raised in this action, its effect is a ruling that the issues are not presently justiciable. Needless to say, a declaratory judgment action requires an actual controversy between parties having a stake in the outcome (*see e.g. New York Pub. Interest Research Group v Carey*, 42 NY2d 527, 529-531 [1977]), and is routinely used to resolve coverage issues with respect to claims against insureds (*see e.g. Cordial Greens Country Club v Aetna Cas. & Sur. Co.*, 41 NY2d 996 [1977]; *Post v Metropolitan Cas. Ins. Co. of N.Y.*, 227 App Div 156 [1929], *affd* 254 NY 541 [1930]). Such an action can be maintained prior to a determination of liability against the insured in the underlying action (*see State Farm Fire & Cas. Co. v LiMauro*, 103 AD2d 514, 518 [1984], *affd* 65 NY2d 369 [1985]; *Post*, 227 App Div at 158). Nor does the insolvency of the insured adversely affect the justiciability of a coverage issue (*id.* at 159).

Here, Corning, being sued in thousands of asbestos personal injury cases, has notified its insurers that it intends to seek coverage for those claims. It has also agreed to contribute assets worth at least $300 million toward a settlement of those claims, reserving the right to seek recovery of that contribution from its insurers. To that end, it has even commenced an adversary proceeding in the PCC bankruptcy seeking a declaration that its insurers are obligated to provide coverage for such claims. Clearly, those facts are more than sufficient to show justiciability. As noted, irrespective of whether the PCC plan is confirmed, a justiciable controversy exists. The only difference, in effect, between confirmation and nonconfirmation is the elimination of Unibestos and Corhart claims against Corning in the event of the former development. But that would have no impact on the justiciability of the coverage dispute between Corning and its insurers.

Supreme Court distinguished the authorities supporting the argument that, given the existence of numerous asbestos claims against Corning, declaratory relief is the appropriate remedy, apparently on the ground that the bankruptcy court has

enjoined the prosecution of the Unibestos and Corhart claims against Corning. That circumstance, however, has not eliminated Corning's asbestos liability; it has merely moved the issue to a different forum, the bankruptcy court. The exposure of its asbestos liability in the bankruptcy court, as with the resolution of that issue under the tort system, poses a sufficient risk of liability exposure to Corning's insurers as to render the issues relating to that risk justiciable.

Moreover, the argument that no justiciable controversy exists in this action is belied by Corning's own claims to the contrary in the adversary proceeding, where it sought a declaration of coverage with respect to the Unibestos and Corhart claims under all its policies, including the nonaffiliate, nonassigned policies. When Corning made its explicit allegation of an "actual justiciable controversy" between the parties, there was an injunction in place staying the prosecution of Unibestos claims against it. Later, the bankruptcy court expanded the injunction to include the Corhart claims. Even after the expansion of the injunction to include both claims, Corning opposed the insurers' efforts to withdraw the adversary proceeding from the bankruptcy court and continued to assert its coverage claims in the adversary proceeding. It was not until the Pennsylvania District Court announced it would dismiss the claims under the nonassigned, nonaffiliate policies from the adversary proceeding in favor of the New York State court action that Corning took the position that the coverage dispute as to these policies was nonjusticiable.

The reason behind such inconsistent positions on justiciability is obvious: Corning prefers to litigate the coverage disputes in the bankruptcy court rather than in Supreme Court. It takes a further inconsistent position in seeking to assign the assigned policies to satisfy asbestos claims, thereby raising a justiciable dispute as to those policies. And, as noted, it now admits that a justiciable coverage dispute exists as to the assigned and affiliate policies. Thus, by its reckoning, it has a justiciable dispute with the insurers that issued the assigned and affiliate policies, but only in the bankruptcy adversary proceeding, and not with the insurers underwriting the nonassigned, nonaffiliate policies.

Nor does the pendency of the bankruptcy court adversary proceeding provide a basis for the stay. It is appropriate to stay an action in deference to another only where the determination in the other will resolve all of the issues in the stayed action and the judgment on one trial will dispose of the controversy in

both actions (*Somoza v Pechnik*, 3 AD3d 394 [2004]). The possibility or actuality of two trials is of no importance (*Pierre Assoc.*, 32 AD2d at 497).

Since the instant state court action contains claims already dismissed from the adversary proceeding—those arising from the nonassigned, nonaffiliate policies—that total more than one billion dollars, the bankruptcy adjudication will not be dispositive of these claims. The New York action includes policies, claims and issues that are not part of the PCC bankruptcy. To stay proceedings as to these matters will only promote delay, not efficiency (*see Grand Cent. Bldg. v New York & Harlem R.R. Co.*, 59 AD2d 207, 209-210 [1977]), and constitutes an abuse of discretion.

Moreover, a federal court with bankruptcy jurisdiction over non-core claims is mandated to abstain from exercising that jurisdiction in favor of a state court proceeding involving the same claims, if those claims can be "timely adjudicated" in the state court (*Mt. McKinley Ins. Co. v Corning Inc.*, 399 F3d at 447; 28 USC § 1334 [c] [2]). At the time Supreme Court issued its stay order, both the New York and Pennsylvania federal district courts had expressly ruled that the disputes as to at least 70.7% of the policy limits at issue in this action were non-core and should be adjudicated in the state court. Subsequent to the entry of Supreme Court's stay order, the Second Circuit ruled that none of the claims at issue implicate core federal bankruptcy jurisdiction (*Mt. McKinley*, 399 F3d at 447-450). Accordingly, the Second Circuit remanded the issue of the affiliate insurers' coverage to the District Court for a determination as to whether that issue could be timely adjudicated in a state forum of appropriate jurisdiction, which is a condition of mandatory abstention (*see* 28 USC § 1334 [c] [2]). Thus, Supreme Court's concern over impinging on exclusive federal bankruptcy jurisdiction was misplaced. The relatively insignificant overlap in claims pending in the Pennsylvania District Court and this action should be resolved in favor of Supreme Court's jurisdiction (*id.*).

Finally, Corning's adversary proceeding has now been stayed for almost two years. Indeed, given the Circuit Court's vacatur of the New York District Court's finding of federal bankruptcy jurisdiction over the claims under the affiliate policies, these claims cannot even be adjudicated in the bankruptcy proceeding. In light of the Second Circuit's holding that none of the claims at issue implicate core federal bankruptcy jurisdiction,

Supreme Court should adjudicate the entirety of the claims in the New York action.

For all of the foregoing reasons, the order on appeal should be reversed, the stay vacated, and the matter remanded to Supreme Court for resolution of the issues presented and a declaration of the parties' rights. Under the foregoing analysis, Corning's unresolved dismissal motions, based on nonjusticiability, lack of jurisdiction over the cause of action (CPLR 3211 [a] [2]), failure to state a cause of action (CPLR 3211 [a] [7]), and "another action pending between the same parties for the same cause of action" (CPLR 3211 [a] [4]), are meritless and should be denied.

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered July 12, 2004, which, to the extent appealed from as limited by the briefs, granted a stay of this declaratory judgment action pending the outcome of a related federal proceeding, should be reversed, on the law, the facts and in the exercise of discretion, with costs and disbursements, the stay vacated and the matter remanded for further proceedings.

ANDRIAS, J. (dissenting). Since we believe that Supreme Court properly exercised its discretion in granting a stay of this declaratory judgment action pending the outcome of related federal proceedings, we dissent and would affirm.

In light of the related federal proceedings, the stay was justified to conserve judicial resources (*see Asher v Abbott Labs.*, 307 AD2d 211 [2003]). In particular, the outcome of the federal proceedings will affect whether or not certain claims may be heard before Supreme Court. In addition, a stay is necessary since the action is premised upon a future event which may never occur and any determination at this stage of the proceeding may be rendered merely advisory (*Combustion Eng'g v Travelers Indem. Co.*, 75 AD2d 777 [1980], *affd* 53 NY2d 875 [1981]).

BUCKLEY, P.J., and MALONE, J., concur with SULLIVAN, J.; TOM and ANDRIAS, JJ., dissent in a separate opinion by ANDRIAS, J.

Order, Supreme Court, New York County, entered July 12, 2004, reversed, on the law, the facts and in the exercise of discretion, with costs and disbursements, the stay vacated and the matter remanded for further proceedings.