Matter of PPDAI
Group Securities Litigation.


654482/2018

Saliann Scarpulla, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 26, 27,
28, 29, 30, 31, 32, 33, 34, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 60, 85, 86
were read on this motion to/for STAY.
The following e-filed documents, listed by NYSCEF document number (Motion
003) 72, 73, 74, 75, 76, 77, 78, 79, 82, 83, 84
were read on this motion to/for STAY. 
Upon the foregoing documents, it is
In this action alleging violations of the Securities Act of 1933 ("'33 Act"), defendants PPDAI
Group, Inc. ("PPDAI"), Credit Suisse Securities (USA) LLC ("Credit Suisse"), Citigroup Global
Markets Inc. ("Citigroup"), Keefe, Bruyette & Woods ("KBW"), Law Debenture Corporate
Services Inc. ("Law Debenture"), and Giselle Manon ("Manon") (collectively, "Moving
Defendants") move, pursuant to CPLR 2201, for a stay of the putative class action brought by
plaintiffs Yizhong Huang ("Huang") and Ravindra Vora ("Vora") (together, "Plaintiffs") pending
final disposition of an action currently pending in federal court.[FN1]
Moving Defendants also move, pursuant to the Private Securities Litigation Reform Act of 1995
(the "PSLRA"), 15 U.S.C. § 77z-1(b)(1), CPLR 3214(b) and Commercial Division Rule
11(d), for an order staying discovery pending resolution of any motions to dismiss this
action.
PPDAI, a Cayman Islands corporation with primary operations in China, was co-founded by
defendants Jun Zhang ("Zhang"), Tiezheng Li ("T. Li"), Honghui Hu ("Hu") and Shaofeng Gu
("Gu") in 2007.[FN2]
As per its website, PPDAI is an online consumer [*2]finance
marketplace that connects borrowers and investors "whose needs have not been met by
traditional financial institutions."[FN3]
PPDAI, through its full-service peer-to-peer ("P2P") lending platform, generates revenue
"primarily from fees charged to borrowers for [its] services in matching them with investors and
for other services [it] provide[s] over the loan lifecycle." Other revenue-generating services
include loan facilitation service fees, post-facilitation service fees, collection fees and
management fees.
To raise additional capital, PPDAI engaged in an initial public offering ("IPO") in November
2017. The offering materials ("Offering Materials") included a prospectus ("Prospectus") and
Forms F-1 and F-5 registration statements (the "Registration Statement"). The SEC declared the
Registration Statement effective on November 9, 2017 and, on November 13, 2017, Moving
Defendants priced the American Depositary Shares ("ADS") at $13 per share and filed the final
prospectus for the IPO. 
PPDAI appointed Law Debenture as its agent for the service of process in the U.S.
and the latter's service of process officer, Manon, allegedly signed the Offering Materials. Credit
Suisse, Citigroup and KBW served as underwriters for the IPO which, Plaintiffs allege, generated
$221 million in proceeds before underwriting discounts and commissions. 
According to the CAC, Huang and Vora acquired ADSs of PPDAI in connection with the
IPO "pursuant and/or traceable to" the Offering Materials. Plaintiffs allege that, by the Offering
Materials' effective date, China increased its scrutiny and regulation of the P2P lending industry
due to the publicity of widespread complaints about lending and collection improprieties.
Plaintiffs further allege that PPDAI engaged in the type of lending and collection misconduct,
such as usurious loan rates and abusive collection practices, that was the subject of China's
scrutiny. The CAC states that investors whom Moving Defendants solicited to purchase ADSs in
the IPO and investors who purchased ADSs pursuant and/or traceable to the Offering Materials
were not aware of the scope of the threat to PPDAI's business that was posed by China's existing
and prospective regulations.
For example, the CAC alleges that the Offering Materials represented that
[a]lthough the interest rates of all our loan products are not more than 36% per
annum, certain loans facilitated by our platform have interest rates over 24% per
annum.
***
The transaction fee
we charge is recognized as our revenue and lenders will not receive any part of the transaction
fee we charge from borrowers. As a result, we do not believe that our business operation violates
this provision even though in some cases the combination of the interest rate and the transaction
fee rate we charge from borrowers exceeds 36%.
Plaintiffs allege
that PPDAI's exposure to loans with rates higher than 36% was significant [*3]because, under Chinese law, the part of any interest rate in excess of
36% is unenforceable. Plaintiffs assert that Moving Defendants failed to disclose the extent of its
exposure to these unenforceable loans in the Offering Materials. 
Plaintiffs claim that, less than a month following the IPO, analysts reported that PPDAI's
average all-in rate of interest grossly exceeded 36%. Credit Suisse estimated that "the blended
annualized cost [PPDAI] charged is around 60%." Plaintiffs further claim that, in December
2017, after China promulgated regulations prohibiting all-in rates over 36% and the issuance of
Credit Suisse's analyst report, PPDAI's trading price substantially declined.
In addition, in the Offering Materials, PPDAI represented that it had previously engaged in
practices with institutional investors that could be classified as credit enhancement practices
prohibited by the Guidelines on Promoting the Healthy Development of Online Finance Industry
and the Interim Measures on Administration of Business Activities of Online Lending
Information Intermediaries. The Offering Materials noted that PPDAI no longer engaged in such
practices, stating that, "[w]e have changed the cooperation model with these institutional
investors and have ceased such practices as of the date of this prospectus."
Plaintiffs allege that, contrary to the assurances in its Offering Materials, PPDAI engaged in
prohibited credit enhancement practices, "exposing PPDAI to fines and regulatory repercussions
and jeopardizing PPDAI's ability to do business." A July 18, 2018 UBS analyst report noted that
the continued engagement in credit enhancement practices by PPDAI and other P2Ps created
"downside risks to their margins." Allegedly, over the two-day period after the UBS report,
PPDAI's trading price again declined. 
The Offering Materials also stated that PPDAI
Primarily rel[ies] on [its] in-house collection team to handle the collection of
delinquent loans. [PPDAI] also engage certain third-party collection service providers to assist []
with payment collection from time to time. If those collection methods are viewed by the
borrowers or regulatory authorities as harassments, threats or other illegal conducts, we may be
subject to lawsuits initiated by the borrowers or prohibited by the regulatory authorities from
using certain collection methods.
Plaintiffs contend that the
statement regarding collection methods was misleading because, at the time of the Offering
Materials, PPDAI was engaging in improper collection methods and had received complaints
about its actions. Plaintiffs also contend that PPDAI's collection practices also contravened
Chinese law. 
Lastly, the CAC states that PPDAI had an affirmative obligation to disclose facts in the
Offering Materials required by Item 303 of Regulation S-K, including information regarding
known trends, uncertainties or events. Plaintiffs allege that PPDAI failed to disclose uncertainties
and risks that were known to it at the time of the Offering Materials including those (1)
"associated with its practice of imposing total annualized borrowing costs in excess of 36% of
the loan amount;" and (2) "associated with its predatory, unethical and illegal loan origination
and collection practices."
Based on the foregoing, Huang filed a complaint on September 10, 2018 alleging violations
of §§11, 12(a)(2) and 15 of the 1933 Act in connection with the alleged materially
misleading statements and omissions in PPDAI's IPO Offering Materials. Vora filed a similar
complaint on September 27, 2018. These actions were then consolidated, [*4]by a stipulation that I so ordered, on October 16, 2018.
The parties had a preliminary conference in this case on November 7, 2018. On November
26, 2018, Weichen Lai filed the EDNY Action alleging violations of the '33 Act and making
virtually the same allegations contained in the earlier-filed Huang and Vora complaints. On
December 17, 2018, Plaintiffs filed the CAC, which amplified the factual allegations and added a
defendant (Law Debenture). Meanwhile, on January 8, 2019, plaintiff in the EDNY Action filed
an amended complaint, prior to the appointment of a lead plaintiff, and added a fraud claim under
the Securities Exchange Act of 1934 ("'34 Act").
Moving Defendants originally moved to stay this action by Order to Show Cause. That
motion was later withdrawn without prejudice and Moving Defendants refiled this motion for a
stay on notice. Moving Defendants also request an order staying discovery in this action until the
resolution of any motions to dismiss.
Discussion
I. Motion to Stay Action Pursuant to CPLR 2201
CPLR 2201 states that "[e]xcept where otherwise prescribed by law, the court in which an
action is pending may grant a stay of proceedings in a proper case, upon such terms as may be
just." A trial court's decision on a motion pursuant to CPLR 2201 is discretionary. Mook v. Homesafe America, Inc., 144
AD3d 1116, 1117 (2d Dept. 2016).There are numerous factors that a court may consider in
determining whether to issue a stay: 1) which forum will offer a more complete disposition of the
issues; 2) which forum has greater expertise in the type of matter; 3) which action was
commenced first and the stage of the litigations; 4) whether there is substantial overlap between
the issues raised in each court; 5) whether a stay will avert "duplication of effort and waste of
judicial resources;" and 6) whether plaintiffs have demonstrated that they would be prejudiced by
a stay. Asher v. Abbott Laboratories, 307 AD2d 211, 211-212 (1st Dept. 2003); see
also Reaves v. Kessler, No. 654485/2015, 2017 WL 2482948 (Sup. Ct. NY Cty. June 8,
2017). Below I consider these factors.
A. Identity of Parties, Substantial Overlap of Issues and Complete
Disposition
Moving Defendants argue that a "majority of the [Moving] Defendants are named in both
actions." Plaintiffs note, however, that there is not complete identity of parties, as four Moving
Defendants in this action were not included in the EDNY Action. I note that two of the Moving
Defendants on this motion — Law Debenture and Manon — are not named in the
EDNY Action. This fact weighs in favor of proceeding with the '33 Act claims in this court. 
Moving Defendants next contend that there is a substantial overlap of the issues in this case
and the EDNY Action in that both assert '33 Act claims and seek money damages. Further,
Moving Defendants posit that the EDNY Action offers more complete relief because only a
federal court can reach a complete resolution of all of Plaintiffs' claims. In opposition, Plaintiffs
urge that their deliberate choice to pursue this case on a narrower basis by only bringing
"easier-to-plead-and-prove" '33 Act claims in this forum [*5]should not be overlooked on grounds of more complete resolution
in federal court. Plaintiffs also assert that the federal action will not actually offer a complete
disposition because the '33 Act claims in the EDNY Action are time-barred by the one-year
statute of limitations.
I disagree with Moving Defendants that the EDNY Action necessarily offers more complete
relief than this action because if, as Plaintiffs argue, the '33 Act claims are time-barred in federal
court, then this Court is the only forum that can resolve the '33 Act claims. [FN4]
And, if only the '34 Act claims survive in federal court, overlapping of issues will be reduced.
Thus, consideration of party identity, substantial overlap of issues and complete disposition does
not support imposition of a stay in this action. 
B. First to file
Although it is not dispositive on a motion to stay, the "general rule in New York is that 'the
court which has first taken jurisdiction is the one in which the matter should be determined and it
is a violation of the rules of comity to interfere.'" In re Topps Co., Inc. S'holder Litig., No.
600715/07, 2007 WL 5018882, at *3 (Sup. Ct. NY Cty. June 8, 2007) (citation omitted). The
first to file rule, however, should not be applied mechanically irrespective of other
considerations. AIG Fin. Prods. Corp. v. Penncara Energy, LLC, 89 AD3d 495, 496 (1st
Dept. 2011). 
It is undisputed that Plaintiffs commenced this action two and a half months before [*6]the EDNY Action was commenced. Moving Defendants argue that,
even though first-filed actions are often given priority, that rule should not be applied here
because the EDNY Action offers a complete disposition of the issues. 
Although it is not dispositive, being first to file is still "significant." Certain Underwriters
at Lloyds, London v. Millennium Holdings LLC, No. 600626/06, 2006 WL 2546202, at *7
(Sup. Ct. NY Cty. Aug. 8, 2006). And, in Cyan, Inc. v. Beaver County Employees Ret.
Fund, 138 S.Ct. 1061, 1075 (2018), the Supreme Court made clear that state courts have
subject matter jurisdiction to hear '33 Act claims. If the first-to-file rule is uniformly abandoned
whenever later filed federal court actions assert other federal claims along with '33 Act claims,
New York state courts would never exercise their jurisdiction to resolve first-filed '33 Act claims.
This result would render Cyan meaningless. See Cyan, Inc. v. Beaver County
Employees Ret. Fund, 138 S.Ct. 1061, 1075 (2018); Hoffman v. AT & T Inc.,
No. 650797/2019, 2019 WL 2578360 at *2 (Sup. Ct. NY Cty. June 24, 2019) (finding that "the
'first filed' rule must have some vitality in a post-Cyan world"). The fact that Plaintiffs
commenced this action before the EDNY Action therefore significantly favors litigation of
Plaintiffs' '33 Act claims in this court.
C. Expertise
Moving Defendants argue that federal courts have "greater experience and familiarity" with
federal claims and because this action only brings federal claims, the federal court is the better
forum. Moving Defendants also note that pre-Cyan, the majority of New York federal
courts barred plaintiffs from proceeding with '33 Act claims in state court. However, these cases
are irrelevant, as the Supreme Court expressly held in Cyan that state courts have
jurisdiction to "adjudicate class actions alleging only 1933 Act violations." Cyan, 138
S.Ct. at 1078. 
Moreover, the Commercial Division is a long-standing, specialized business court which
deals exclusively with complex commercial litigation. The federal courts have general dockets of
both criminal and civil actions. Consideration of expertise weighs in favor of keeping this action
in the Commercial Division. See Hoffman, 2019 WL 2578360 at *2 (noting that the
"liability issues in a 1933 Act case are, if anything, less complex than issues the Commercial
Division resolves every week").
D. Duplication of effort
Moving Defendants assert that absent a stay, they will have to duplicate efforts to litigate the
same claims in two courts. Plaintiffs correctly argue that this concern is tempered by the alleged
untimeliness of the '33 Act claims in the EDNY Action. The possibility that at some point there
might be two trials is not an appropriate basis for granting a stay. Mt. McKinley Ins. Co. v. Corning Inc.,
33 AD3d 51, 59 (1st Dept. 2006) (citation omitted).
Moving Defendants remaining arguments in favor of a stay are unavailing. Also, I note that
Moving Defendants do not cite to any post-Cyan case in support of their [*7]arguments in favor of staying this action and the cases they do cite
are inapposite.[FN5]
Indeed, there are no decisions by the New York appellate courts addressing a motion to stay a '33
Act claim in favor of a later filed federal court action in a post-Cyan universe.
In sum, after review of the factors enunciated in Asher and in accordance with
Cyan, I decline to stay this action in favor of the later-filed EDNY Action.
II. Motion for Discovery Stay
According to Moving Defendants, Plaintiffs should not be permitted to "skirt the PSLRA's
mandatory stay of discovery, which automatically stays all discovery until any motions to dismiss
have been resolved." Moving Defendants contend that the PSLRA's discovery stay applies to all
private actions including those in state court and that if Congress intended the stay to only apply
to federal court actions, it would have said so.
Cyan did not address the applicability of the PSLRA's automatic stay to
state court '33 Act cases.[FN6]
Nor do there appear to be any New York cases concerning this issue. States that have considered
the relationship of the PSLRA discovery stay to state actions are divided. See, e.g. Switzer v.
W.R. Hambrecht & Co., Nos. CGC-18-564904, CGC-18-565324, 2018 WL 4704776, at
*1 (Cal. Super. Ct. Sept. 19, 2018) (stating that "[t]he Court finds that the PSLRA's provision for
a discovery stay is of a procedural nature, and therefore only applies to actions filed in federal
court, not state court."); cf. City of Livonia Retiree Health and Disability Benefits Plan v.
Pitney Bowes Inc., No. X08-FST-CV-18-6038160-S (Conn. Super. Ct. May 15, 2019)
(concluding that the plain meaning of the phrase "any private action arising under this
subchapter" in the PSLRA means that the discovery stay applies to securities claims brought in
state courts). 
Application of the federal PSLRA automatic discovery stay would undermine Cyan's
holding that '33 Act cases may be heard in state courts. Cyan, 138 S.Ct. at 1078.
Accordingly, I am persuaded that the PSLRA's automatic discovery stay is not applicable to an
action brought in New York State court. Lastly, in the Commercial Division discovery generally
continues during motion practice. I therefore decline to stay discovery in this action.
In accordance with the foregoing, it is
ORDERED that the motion by defendants PPDAI Group, Inc., Credit Suisse [*8]Securities (USA) LLC, Citigroup Global Markets Inc., Keefe,
Bruyette & Woods, Law Debenture Corporate Services Inc., and Giselle Manon to stay
Plaintiffs' action is denied; and it is further
ORDERED that the motion by defendants PPDAI Group, Inc., Credit Suisse Securities
(USA) LLC, Citigroup Global Markets Inc., Keefe, Bruyette & Woods, Law Debenture
Corporate Services Inc., and Giselle Manon for an order staying discovery pending resolution of
any motions to dismiss is denied; and it is further
ORDERED that Defendants are directed to serve an answer to the complaint within thirty
(30) days of the date of this decision and order; and it is
ORDERED that counsel are directed to appear for a status conference at 60 Centre Street,
Room 208 on August 28, 2019 at 2:15pm.
This constitutes the decision and order of the Court.
$SIG$
DATE: 7/1/2019
SALIANN
SCARPULLA, J.S.C.



Footnotes

Footnote 1:The federal action, entitled
Lai v. PPDAI Group, Inc., No. 18-cv-6716, is pending in the United States District Court
for the Eastern District of New York (the "EDNY Action").
Footnote 2:The consolidated amended
complaint ("CAC") also includes numerous individual defendants who were officers and
directors of PPDAI. These defendants are not part of the motions before me.
Footnote 3:http://ir.ppdai.com

Footnote 4:Moving Defendants' position
concerning the relevance of the statute-of-limitations issue in federal court is not entirely
consistent. First, in their reply brief, Moving Defendants state that "even if the Securities Act
claims in the Federal Action are adjudicated to be untimely this has no impact on this motion."
Moving Defendants' cite to Reaves v. Kessler, No. 654485/2015, 2017 WL 2482948
(Sup. Ct. NY Cty. June 8, 2017) in support of this argument but that case is distinguishable. In
Reaves, which is non-binding on this Court, the court stated that there was no case
requiring it to "weight the relative merits of the federal action and the state action as a factor in
determining whether to impose a stay." Id. at *11. Here, however, Plaintiffs do not argue
that this action is more meritorious than the EDNY Action. Rather, Plaintiffs argue that '33 Act
claims will be dismissed in the EDNY Action due to a procedural defect. 

Second, at oral argument, defense counsel initially represented that Moving
Defendants did "not anticipate moving to dismiss on statute of limitations grounds in the federal
court" and that Plaintiffs' statute-of-limitations argument was therefore a non-issue. However, at
the end of oral argument, defense counsel amended Moving Defendants' position, stating that
"[i]f the state court plaintiffs didn't have standing or the Court lacked jurisdiction, which we
could obviously learn in discovery, there could be circumstances where the case would be time
barred." Moving Defendants' varying statements/positions about the relevance of the
statute-of-limitations issue in federal court underscores that it is not a "non-issue."


Footnote 5:For example, Moving
Defendants heavily rely on Barron v. Bluhdorn, 68 AD2d 809 (1st Dept. 1979) which not
only pre-dates Cyan but also predates the existence of the Commercial Division.
Footnote 6:The PSLRA, in relevant part,
states "[i]n any private action arising under this subchapter, all discovery and other proceedings
shall be stayed during the pendency of any motion to dismiss, unless the court finds, upon the
motion of any party, that particularized discovery is necessary to preserve evidence or to prevent
undue prejudice to that party." 15 U.S.C. § 77z-1(b)(1).